Hillsborough-southern judicial district
No. 2005-546

DANIEL PROULX

v.

DIRECTOR, NEW HAMPSHIRE DIVISION OF MOTOR VEHICLES

Argued: September 13, 2006
Opinion Issued: November 3, 2006

*Robert J. Moses*, of Amherst, by brief and orally, for the plaintiff.

*Kelly A. Ayotte*, attorney general (*Wynn E. Arnold*, senior assistant attorney general, on the brief and orally), for the defendant.

DALIANIS, J. The plaintiff, Daniel Proulx, appeals the order of the Superior Court (*Hicks*, J.) affirming the decision of the New Hampshire Department of Safety upholding the suspension of his driver's license by the defendant, the Director of the New Hampshire Division of Motor Vehicles (DMV). We affirm.

The trial court recited the following facts, which the parties do not dispute on appeal. On September 10, 2004, Officer Douglas Barnett of the Brookline Police Department stopped the plaintiff's vehicle after observing it cross the double yellow line. After noticing that the plaintiff's speech was slurred, his eyes were glassy and bloodshot, and a faint odor of alcohol was emanating from the vehicle, Officer Barnett asked the plaintiff to submit to field sobriety tests. Officer Barnett subsequently arrested the plaintiff for driving under the influence.

Once in the police cruiser, Officer Barnett read the administrative license suspension (ALS) form to the plaintiff and asked if he would submit to a breathalyzer test. The plaintiff replied that he wanted to think about it. He then asked Barnett about the consequences of refusing to submit to the breathalyzer test. Barnett responded "that his license could be suspended by the state." The plaintiff then asked if he could take a blood test and Barnett agreed. He transported the plaintiff to a nearby hospital for the blood test, where he again read the ALS form to the plaintiff. Following a brief discussion about one of the lines on the form, the plaintiff agreed to the blood test and signed the form. The plaintiff initialed each line, indicating that he understood the form. Ultimately, for reasons not relevant to this opinion, the plaintiff refused to submit to any blood test.

The plaintiff requested an administrative hearing to challenge the suspension of his driver's license. The hearing examiner recommended that the suspension be upheld. Thereafter, the plaintiff appealed to the superior court, which upheld the decision of the hearing examiner.

On appeal, the plaintiff argues that Barnett inadequately advised him of the consequences of refusing the requested test because Barnett told him that his license "could" be suspended if he refused to submit to it.

In an appeal to the superior court from an ALS decision, the plaintiff has the burden to show that the order was clearly unreasonable or unlawful, and all findings of fact on questions properly before the hearings officer are deemed to be *prima facie* lawful and reasonable. RSA 263:75, II (2004); *see also Saviano v. Director, N.H. Div. of Motor Vehicles*, 151 N.H. 315, 318 (2004). The superior court may not set aside or vacate the decision

appealed from "unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 263:76 (2004). We will uphold the superior court's decision on appeal unless the evidence does not support it or it is legally erroneous. *See Saviano*, 151 N.H. at 318.

New Hampshire law mandates license suspension for those who refuse to submit to the test designated by the law enforcement officer. RSA 265:92, I (2004). RSA 265:87, I(c) (2004) requires that, "[b]efore any test of a person's blood, urine or breath ... is given, the law enforcement officer shall ... [i]nform him of the consequences of his refusal to permit a test at the direction of the law enforcement officer." Under RSA 265:87, II (2004), "[i]f the law enforcement officer fails to comply with the provisions of [RSA 265:87], the test shall be inadmissible as evidence in any proceeding before any administrative officer and court of this state." *See* RSA 265:91-b, II(f) (2004) (no license suspension unless hearing officer finds that "officer informed the arrested person of the fact that refusal to permit the test would result in suspension of his license or driving privilege").

■ Because there is evidence in the record to support a finding that the officer adequately advised the plaintiff that his driver's license would be suspended if he refused to submit to the test, we uphold the trial court decision. The officer read the ALS form to the plaintiff twice. That form states, in pertinent part:

1. You have been arrested for driving under the influence of alcohol or drugs.

2. You are being asked to submit to a test or tests, at the discretion of a law enforcement officer, in order to determine the alcohol or drug concentration in your system. You may be asked to perform a breath, blood or urine, or physical test, or any combination of these.

3. You have the right to a similar test or tests of blood, urine or breath taken by a person of your own choosing at your own expense. Upon your request, you will be given the opportunity for such an additional test(s). You also have the right to obtain a portion of our sample of your breath, blood, or urine for testing at your own expense.

4. If you submit to a blood, urine or breath test which shows an alcohol concentration of 0.08 or more (or if you are under age 21, of 0.02 or more), your New Hampshire driver's license/operating

privileges or non-resident operating privilege or right to drive in this state will be suspended.

5. If you refuse to take a test or tests, the refusal can be admissible in court.

6. If you refuse to submit to a test requested by the officer, your New Hampshire driver's license/operating privileges or non-resident operating privilege to drive in this state will be suspended.

*See Saviano*, 151 N.H. at 316-17. The record further shows that after the form was read to the plaintiff for a second time, he initialed *each* of the above statements and signed where it stated: "I have been informed of these rights." Although after the officer read the ALS form to the plaintiff for the first time, the officer told him that "his license could be suspended by the state," the hearing examiner reasonably could have found that any misunderstanding from the officer's use of the word "could" was cured when he read the form to the plaintiff for the second time.

*Affirmed.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred.